1 | Yana G. Henriks, Esq. (SBN 250638)
  | Email: yhenriks@law-mh.com
2 | **McMURRAY HENRIKS, LLP**
3 | 811 Wilshire Blvd., Suite 1640
  | Los Angeles, California 90017
4 | Telephone: (323) 931-6200
  | Facsimile: (323) 931-9521
5 | Attorneys for Plaintiff and Counter-Defendants,
  | SKU Diamond Jewelry, LLC, Orit Cohen, and Ronen Cohen

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

RONEN COHEN, an individual; ORIT COHEN, an individual; and SKU DIAMOND JEWELRY, LLC, a California limited liability company,

　　　　Plaintiffs,

　　v.

SHIRLEY SULEMINIAN, an individual; SKU JEWELRY COMPANY, a California Corporation; and KAYLEE AND ROSE, INC., a California Corporation,

　　　　Defendants.

SHIRLEY SULEMINIAN, an individual,

　　　　Counterclaimant,

　　v.

RONEN COHEN and ORIT COHEN, individuals,

　　　　Counter-Defendants.

Case No. 2:21-cv-08597-SSS-ASx

*Hon. Sunshine S. Sykes – Crtrm 2*

**DECLARATION OF YANA G. HENRIKS, ESQ. IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS SHIRLEY SULEMINIAN, SKU JEWELRY COMPANY, LLC, AND KAYLEE AND ROSE, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT F.R.CIV.P 12(b)(6) AND REQUEST FOR SANCTIONS 28 U.S.C. § 1927 [Doc. 85]**

*Action Filed:* November 2, 2021
*Trial Date:* TBD

Date: October 20, 2023
Time: 2:00 p.m.
Location: 3470 Twelfth Street
Riverside, CA 92501
Courtroom 2

---

1

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR SANCTIONS

# DECLARATION OF YANA G. HENRIKS

I, Yana G. Henriks, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am admitted to practice law before the Federal District Courts for the Central District of California. I have personal knowledge of the following facts and if called upon to testify under oath, I would and would do so competently to the following facts.

2. I am the attorney of record for Plaintiff SKU Diamond Jewelry, LLC, in the above-entitled matter.

3. On or around September 11, 2023, I was out of the office and attempted to respond to opposing counsel's email sent under Rule 7-3 to meet and confer. I responded to opposing counsel; however, I was unaware that my email to opposing counsel did not send from my mobile phone. I received a call from my office that opposing counsel had attempted to reach me to set up a meet and confer.

4. On or around September 13, 2023, I joined a conference call with opposing counsel late as I could not connect to the conference call. From the outset of the call, the "meet and confer" was hostile. I informed opposing counsel that I could not unilaterally change the caption as they demanded, evidenced in the declaration of Ms. Jensvold-Rumage (Dkt 85-2 p.2). She later provided me with only the Court's order as legal authority to change a caption (Dkt. 85-2 at p. 5 *eMail*). The order does not state the caption must be changed. I am aware that one needs a court order to change a caption which was not part of the prior order. I did offer to stipulate to a change in caption and submit it to the court; however, contrary to Ms. Jensvold-Rumage's declaration, opposing counsel was disinterested.

1  Ultimately on September 13, 2023, Opposing Counsel sent me a self-serving email
2  which I believe mischaracterizes the meet and confer.  This email contained an
3  ultimatum: comply with all of Defense counsel's demands in 90 minutes or else.
4  (Dkt 85-2 p.5)

5      5.    I explained that I had concerns about testimony of Defendant
6  SULEMINIAN who had declared under penalty of perjury in her deposition during
7  this matter that she did not believe the 2009 SKU mark had been cancelled.
8  Attached to my declaration as Exhibit "1" is a true and correct copy of the
9  Reporter's Transcript from Ms. Suleminian's deposition.  If Defendants somehow
10  were able to prove the 2009 SKU mark was not void, then priority under the
11  Lanham Act would support allegations under Section 1114 of the Lanham Act.

12      6.    I also explained the Court had ruled that the common law unregistered
13  trademark rights to the 2009 SKU mark had been transferred to my client per the
14  Court's prior order.  As such, common law claims would still invoke protection
15  under the Lanham Act.  Opposing counsel disagreed and claimed the Lanham Act
16  only applies to "registered" trademarks.  This position is evidenced in Ms.
17  Jensvold-Rumage's exhibit to her declaration, the meet and confer letter (Dkt 85-2).

18      7.    I also attempted to discuss the SKU Diamond and SKU Jewelry marks.
19  While the Court found them to be void ab initio, my research showed they would
20  still be subject to common law protection under the Lanham Act under Section
21  1125.  Again, Opposing counsel took the position that only registered marks can be
22  protected under the Lanham Act.

23      8.    My firm conducted research into "common law claims" which cover
24  unregistered marks.  My firm's research found that the Lanham Act had been

1    amended and the Supreme Court, as well as numerous Court of Appeals and
2    District Courts, follow Section 43 of the Lanham Act which expanded protection to
3    "common law" unregistered trademarks.  Specifically, the <u>Matal v. Tam</u> (2017) 582
4    U.S. 218 and <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u> (1992) 505 U.S. 763 cases
5    demonstrate protection under the Lanham Act for common law marks.
6         9.   Opposing counsel also demanded I "strike" portions of the Third
7    Amended Complaint.  Defendants' counsel made it very clear they were going to
8    file a Rule 12(b)(6) motion regardless of the meet and confer.  I informed opposing
9    counsel that Rule 12(b)(6) cannot be used to strike portions of a pleading.  I am
10   familiar that Rule 12(f) is the proper procedural vehicle for striking portion of a
11   pleading with a showing of prejudice.  At no time during the "meet and confer" did
12   opposing counsel explain how their clients were prejudiced in any manner by the
13   Third Amended Complaint.
14        10.  In response to Opposing Counsel's claim that I must strike paragraphs of
15   the Third Amended Complaint because the complaint must "stand on its own" I
16   informed opposing counsel that the case law they cited is inconsistent with the case
17   at hand.  Even removing the paragraphs complained of by Defendants' counsel, the
18   Third Amended Complaint sufficiently stands on its own and complies with Fed. R.
19   Civ. P. 8 pleading standards, consistent with this Court's order on clarification (Dkt
20   82). The cases cited by Defendants' counsel are factually different as those
21   pleadings were insufficient factually when the pleading consisted of a majority of
22   other documents, such as ten (10) applications for TROs.   At no time did
23   Defendants' counsel state that the Third Amended Complaint did not allege
24   sufficient facts, outside of the two paragraphs they wanted stricken under Rule

DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND REQUEST FOR SANCTIONS

12(b). Nor did Defendants' counsel explain how their clients were prejudiced by the disputed paragraphs.

11. The phone call ended abruptly as Defendants' counsel appeared unhappy that I would not capitulate to their demands during the "meet and confer". The atmosphere was hostile and I recommended that we use Zoom to perform the meet and confer process and record it in the event of a dispute between the parties. While Ms. Jensvold-Rumage's declaration states I wanted to illegally record the "meet and confer", that is not accurate. A recording that both parties' consent to in California is not unlawful. I merely invited my opposing counsel to use Zoom if there were going to be disputes as to who said what, to whom, and why. I also wanted to avoid any mischaracterization of what was discussed. It is my office's custom and practice to use Zoom for meet and confers, and with both parties' consent, to record and share the recording.

12. My firm has spent over 12 hours conducting research into Plaintiff's positions taken in the Third Amended Complaint. Our research supports that an amended pleading can allege different facts under 9th Circuit law. The Lanham Act applies to "common law" trademarks which are unregistered marks, Rule 12(b)(6) cannot be used to strike portions of a complaint to attack a cause of action, and there is no right to change a caption absent a court order.

///

///

///

///

///

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my personal knowledge.

Executed September 29, 2023 in Los Angeles, California

By: ____*/s/ Yana G. Henriks*____
Yana G. Henriks, Esq.
Attorney for Plaintiff
SKU Diamond Jewelry, LLC

DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR SANCTIONS

# Exhibit 1

```
 1              UNITED STATES DISTRICT COURT

 2      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4     RONEN COHEN and ORIT COHEN,           )

 5     individuals                           ) Case No.

 6            Plaintiffs,                    ) 2:21-cv-08597-

 7     vs.                                   ) SSS-ASx

 8     SHIRLEY SULEMINIAN, an individual,    )

 9            Defendant.                     )

10     SHIRLEY SULEMINIAN, an individual,    )

11            Counterclaimant,               )

12     vs.                                   )

13     RONEN COHEN and ORIT COHEN,           )

14     individuals,                          )

15            Counter-Defendants.            )

16

17

18    VIDEOTAPED RULE 30(B)(6) DEPOSITION OF SKU JEWELRY COMPANY,

19                      SHIRLEY SULEMINIAN

20                     September 12, 2022

21

22

23     REPORTED REMOTELY BY:

24     AMBER S. WILLIAMS, C.S.R. No. 1080

25     Notary public
```

Page 1

```
 1              THE VIDEOTAPED 30(B)(6) DEPOSITION OF SKU
 2     Jewelry Company, Shirley Suleminian was taken on
 3     behalf of the plaintiffs/counter-defendants via
 4     videoconference, commencing at 10:16 a.m. on
 5     September 12, 2022, before Amber S. Williams via
 6     videoconference, Certified Shorthand Reporter and
 7     Notary Public within and for the State of Idaho, in
 8     the above-entitled matter.
 9
10                        APPEARANCES:
11     For Plaintiffs via videoconference:
12          ERVIN COHEN & JESSUP, LLP
13          BY:  GEOFFREY M. GOLD
14          9401 Wilshire Bouevard, Ninth Floor
15          Beverly Hills, California  90212-2974
16          ggold@ecjlaw.com
17     For Defendant:
18          MILORD LAW GROUP
19          BY:  MILORD A. KESHISHIAN
20          10517 West Pico Boulevard
21          Los Angeles, California  90064
22          milord@milordlaw.com
23
24
25
                                                  Page 2
```

```
 1      For Defendant:
 2           BEITCHMAN & SEKIAN, PC
 3           BY:  ANDRE BONIADI
 4           16130 Ventura Boulevard, Suite 570
 5           Encino, California  91436
 6           aboniadi@bzlegal.com
 7      Also Present:
 8           Mehran Khatchadorian, videographer, via
 9           videoconference
10           Jerry Curran, technician, via
11           videoconference
12           Orit Cohen, via videoconference
13           Danny Suleminian
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

| | | |
|---|---|---|
| 1 | Q.  (BY MR. GOLD):  Okay.  What was your | 11:46 |
| 2 | understanding about David Mousiki's ownership of the | 11:46 |
| 3 | trademark SKU? | 11:46 |
| 4 | MR. KESHISHIAN:  Objection.  Calls for a | 11:46 |
| 5 | legal conclusion, misleading. | 11:46 |
| 6 | THE WITNESS:  So I -- there was no | 11:47 |
| 7 | understanding that they own SKU.  The only | 11:47 |
| 8 | understanding I know, that he took care of the | 11:47 |
| 9 | trademark registration. | 11:47 |
| 10 | Q.  (BY MR. GOLD):  And when did he take | 11:47 |
| 11 | care of the trademark registration? | 11:47 |
| 12 | A.  I believe 2009. | 11:47 |
| 13 | Q.  And after he took care of the trademark | 11:47 |
| 14 | registration, did you become aware at any time that | 11:47 |
| 15 | Mr. Mousiki was the one who owned the trademark | 11:47 |
| 16 | according to the U.S. Patent and Trademark office? | 11:47 |
| 17 | MR. KESHISHIAN:  Objection.  Misstates the | 11:47 |
| 18 | testimony, misleading, assumes facts not in evidence. | 11:47 |
| 19 | THE WITNESS:  Only after the separation | 11:47 |
| 20 | agreement. | 11:48 |
| 21 | Q.  (BY MR. GOLD):  And when did you find | 11:48 |
| 22 | out -- after the separation agreement was signed in | 11:48 |
| 23 | July of 2020, when did you find out that you | 11:48 |
| 24 | personally had never owned the SKU trademark? | 11:48 |
| 25 | MR. KESHISHIAN:  Objection.  Misstate -- | 11:48 |

```
 1    misstates the record, misleading, assumes facts not           11:48
 2    in evidence, calls for a legal conclusion.                    11:48
 3             THE WITNESS:  Well, from my understanding, I         11:48
 4    always owned the name SKU.  It's my name, Shirley             11:48
 5    Klein Unlimited.  I only understood -- because I'm            11:48
 6    not dealing with paperwork ever, so I only understood         11:48
 7    that when David registered the name, they put his             11:48
 8    name on the registration.  That's all I understood.           11:48
 9             Q.   (BY MR. GOLD):  Okay.  And then you said        11:48
10    after July 2020 you made a discovery about the                11:48
11    trademark SKU.  What was the discovery?                       11:49
12             MR. KESHISHIAN:  Objection.  Vague and               11:49
13    ambiguous, asked and answered.                                11:49
14             THE WITNESS:  As I reply a second ago, David         11:49
15    Mousiki name was on the registration trademark.               11:49
16    That's what I discovered.                                     11:49
17             Q.   (BY MR. GOLD):  When did you discover           11:49
18    it?                                                           11:49
19             A.   Around August 2020.                             11:49
20             Q.   And what did you do when you discovered         11:49
21    it?                                                           11:49
22             A.   We corrected it.                                11:49
23             Q.   In August 2020?                                 11:49
24             A.   I don't recall exact time.                      11:49
25             Q.   Okay.  What did you do when you                 11:49
```

| | | | |
|---|---|---|---|
| 1 | discovered that the trademark was in the name of | | 11:49 |
| 2 | David Mousiki in August of 2020?  What did you do? | | 11:49 |
| 3 | MR. KESHISHIAN:  Objection.  Misstates the | | 11:50 |
| 4 | record, misstates the testimony, vague and ambiguous. | | 11:50 |
| 5 | THE WITNESS:  I believe we signed document to | | 11:50 |
| 6 | correct it. | | 11:50 |
| 7 | Q. | (BY MR. GOLD):  Who signed a document? | 11:50 |
| 8 | A. | David Mousiki. | 11:50 |
| 9 | Q. | What did he sign? | 11:50 |
| 10 | A. | I don't know. | 11:50 |
| 11 | Q. | Do you have a copy of what he signed? | 11:50 |
| 12 | A. | I believe so. | 11:50 |
| 13 | Q. | Okay.  And when was it that he signed | 11:50 |
| 14 | it? | | 11:50 |
| 15 | A. | When? | 11:50 |
| 16 | Q. | Yes. | 11:50 |
| 17 | A. | I think around August.  I'm not sure. | 11:50 |
| 18 | Q. | Did you ask him to sign it? | 11:50 |
| 19 | A. | He was communicating with Danny, my | 11:50 |
| 20 | husband. | | 11:50 |
| 21 | Q. | And do you have a copy of what it is | 11:50 |
| 22 | that he signed? | | 11:50 |
| 23 | MR. KESHISHIAN:  Objection.  Asked and | | 11:50 |
| 24 | answered. | | 11:50 |
| 25 | THE WITNESS:  I believe so. | | 11:50 |

| | | |
|---|---|---|
| 1 | Q. Now, did you ever assign the trademark | 12:07 |
| 2 | name SKU to SKU Jewelry Company? | 12:07 |
| 3 | MR. KESHISHIAN: Objection. Vague and | 12:08 |
| 4 | ambiguous, compound, misleading, calls for legal | 12:08 |
| 5 | conclusion. | 12:08 |
| 6 | THE WITNESS: Can you be more specified about | 12:08 |
| 7 | what do you mean by "assigned the name"? | 12:08 |
| 8 | Q. (BY MR. GOLD): Did you transfer the SKU | 12:08 |
| 9 | name to SKU Jewelry Company at any time? | 12:08 |
| 10 | MR. KESHISHIAN: Objection. Vague and | 12:08 |
| 11 | ambiguous, compound, misleading, calls for legal | 12:08 |
| 12 | conclusion. | 12:08 |
| 13 | THE WITNESS: I mean, the -- SKU Jewelry is | 12:08 |
| 14 | the name, so I believe I did, but I have to check. | 12:08 |
| 15 | Q. (BY MR. GOLD): When did you do that? | 12:08 |
| 16 | MR. KESHISHIAN: Same objections. | 12:08 |
| 17 | THE WITNESS: I don't know. | 12:08 |
| 18 | Q. (BY MR. GOLD): When you did that, were | 12:08 |
| 19 | you aware that David Mousiki was the actual owner of | 12:08 |
| 20 | the name -- of the SKU name and mark? | 12:08 |
| 21 | MR. KESHISHIAN: Objection. Misleading, | 12:08 |
| 22 | misstates the record, misstate the testimony, vague | 12:08 |
| 23 | and ambiguous, compound, calls for legal conclusion. | 12:09 |
| 24 | THE WITNESS: I'm confused about the dates, | 12:09 |
| 25 | because SKU Jewelry had been, you know, since 2019. | 12:09 |

| | | |
|---|---|---|
| 1 | Q.   (BY MR. GOLD):  And after you signed the | 03:14 |
| 2 | separation agreement, you let the SKU trademark | 03:14 |
| 3 | become canceled? | 03:14 |
| 4 | MR. KESHISHIAN:  Objection.  Vague and | 03:15 |
| 5 | ambiguous, misleading, argumentative, calls for a | 03:15 |
| 6 | legal conclusion, incomplete hypothetical. | 03:15 |
| 7 | THE WITNESS:  No, I never did that. | 03:15 |
| 8 | Q.   (BY MR. GOLD):  Well, it did get | 03:15 |
| 9 | canceled by the end of 2020.  Do you agree with that? | 03:15 |
| 10 | MR. KESHISHIAN:  Objection.  Vague and | 03:15 |
| 11 | ambiguous, argumentative, incomplete hypothetical, | 03:15 |
| 12 | misleading, vague and ambiguous. | 03:15 |
| 13 | THE WITNESS:  The trademark was not canceled. | 03:15 |
| 14 | Q.   (BY MR. GOLD):  Well, I'm going to show | 03:15 |
| 15 | you a document that we have marked as Exhibit 1. | 03:15 |
| 16 | MR. GOLD:  If you can, put that up on the | 03:16 |
| 17 | screen. | 03:16 |
| 18 | Q.   (BY MR. GOLD):  And this says that the | 03:16 |
| 19 | trademark -- this is the one for SKU.  That's what | 03:16 |
| 20 | your trademark looked like, correct, Ms. Suleminian? | 03:16 |
| 21 | MR. KESHISHIAN:  Objection.  Vague and | 03:16 |
| 22 | ambiguous. | 03:16 |
| 23 | Q.   (BY MR. GOLD):  I'm now looking at the | 03:16 |
| 24 | upper right-hand corner.  That's what the mark looked | 03:16 |
| 25 | like, correct? | 03:16 |

```
 1          Q.   (BY MR. GOLD):  Well, you're saying              03:19
 2   Mr. Mousiki made a mistake because he's the one who          03:19
 3   should have renewed the trademark.  Is that what             03:19
 4   you're saying?                                               03:19
 5          MR. KESHISHIAN:  Objection.  Misstates her             03:19
 6   testimony, vague and ambiguous, misleading,                  03:19
 7   incomplete hypothetical.                                     03:19
 8          THE WITNESS:  At that point Mr. Mousiki was            03:20
 9   not working with the company.                                03:20
10          Q.   (BY MR. GOLD):  Right.  Mr. Mousiki in            03:20
11   August 2020 transferred to you his ownership in the          03:20
12   trademark; is that true?  Correct?                           03:20
13          MR. KESHISHIAN:  Objection.  Misstates the             03:20
14   testimony, misleading, argumentative, vague and              03:20
15   ambiguous, calls for a legal conclusion.                     03:20
16          THE WITNESS:  I believe that was around that           03:20
17   time.                                                        03:20
18          Q.   (BY MR. GOLD):  All right.  So you got            03:20
19   this assignment from him in August 2020 and then the         03:20
20   trademark was canceled four months later.  Do you            03:20
21   agree with that?                                             03:21
22          MR. KESHISHIAN:  Objection.  Misstates the             03:21
23   document's contents, misleading, argumentative, calls        03:21
24   for a legal conclusion, incomplete hypothetical.             03:21
25          THE WITNESS:  I do not agree with that                 03:21
```

Page 159

| | | |
|---|---|---|
| 1 | because it was never canceled.  We forget to renew | 03:21 |
| 2 | the paperwork. | 03:21 |
| 3 | Q.  (BY MR. GOLD):  Okay.  Let's go down to | 03:21 |
| 4 | the next page.  It says "Canceled" at the bottom | 03:21 |
| 5 | here, December 18th, 2020, because it was expired. | 03:21 |
| 6 | Do you see that?  Do you see it? | 03:21 |
| 7 | MR. KESHISHIAN:  Objection.  Misstates what's | 03:21 |
| 8 | in the document.  The document speaks for itself. | 03:21 |
| 9 | Q.  (BY MR. GOLD):  Do you see where it | 03:21 |
| 10 | says, "Canceled December 18"? | 03:22 |
| 11 | MR. KESHISHIAN:  Objection. | 03:22 |
| 12 | Q.  (BY MR. GOLD):  Do you see that? | 03:22 |
| 13 | MR. KESHISHIAN:  Objection.  Misstates the | 03:22 |
| 14 | contents of the document and the context. | 03:22 |
| 15 | MR. GOLD:  I'm just asking the witness if she | 03:22 |
| 16 | can look at the portion of the agreement -- strike | 03:22 |
| 17 | that. | 03:22 |
| 18 | If she could please look at the portion | 03:22 |
| 19 | of the document where it says, "December 18th, 2020, | 03:22 |
| 20 | canceled, SEC.8, 10 year expired, Section 9." | 03:22 |
| 21 | Q.  (BY MR. GOLD):  Do you see where it says | 03:22 |
| 22 | that in the middle of the page? | 03:22 |
| 23 | MR. KESHISHIAN:  Objection. | 03:22 |
| 24 | MR. GOLD:  I'm just asking her if she sees | 03:22 |
| 25 | the middle of the page. | 03:22 |

Page 160

| | | |
|---|---|---|
| 1 | Q.  (BY MR. GOLD):  Do you see where I'm | 03:22 |
| 2 | referring to?  Can you see it? | 03:22 |
| 3 | MR. KESHISHIAN:  You're not reading the | 03:22 |
| 4 | entirety of what it says there. | 03:22 |
| 5 | MR. GOLD:  I'm identifying.  It says, | 03:22 |
| 6 | "December 18th, 2020, canceled," in capital letters, | 03:22 |
| 7 | "SEC.8," open paren, "10-YR," closed paren, slash, | 03:22 |
| 8 | "Expired Section 9." | 03:23 |
| 9 | Q.  (BY MR. GOLD):  Do you see that it says | 03:23 |
| 10 | that on this document? | 03:23 |
| 11 | A.  Yes, I can see. | 03:23 |
| 12 | Q.  And do you know as of December 18th, | 03:23 |
| 13 | 2020 that it was being canceled? | 03:23 |
| 14 | MR. KESHISHIAN:  Objection.  Vague and | 03:23 |
| 15 | ambiguous, argumentative, the document speaks for | 03:23 |
| 16 | itself, incomplete hypothetical. | 03:23 |
| 17 | THE WITNESS:  Trademark was never canceled. | 03:23 |
| 18 | We just forgot to renew paperwork. | 03:23 |
| 19 | Q.  (BY MR. GOLD):  All right.  And who is | 03:23 |
| 20 | Mr. Javaheri? | 03:23 |
| 21 | A.  This was I believe the lawyer that | 03:23 |
| 22 | originally apply and work with David Mousiki. | 03:24 |
| 23 | Q.  So this lawyer, your understanding is | 03:24 |
| 24 | that he represented David Mousiki; is that correct? | 03:24 |
| 25 | MR. KESHISHIAN:  Objection.  Misstates her | 03:24 |

Page 161

| | | |
|---|---|---|
| 1 | MR. GOLD: Let the court reporter read back | 03:27 |
| 2 | the last question. | 03:27 |
| 3 | THE COURT REPORTER: The last question was: | 03:27 |
| 4 | "What did you do in 2020?" Do you want the question | 03:27 |
| 5 | before that? | 03:27 |
| 6 | Q. (BY MR. GOLD): Yeah, let me reframe it. | 03:27 |
| 7 | Did you do anything in 2020 to make sure | 03:27 |
| 8 | that the SKU trademark Mr. Mousiki was assigning to | 03:27 |
| 9 | you would be valid? | 03:27 |
| 10 | A. Yes. At a certain point I believe Marie | 03:27 |
| 11 | approached the original lawyer for that, and then at | 03:27 |
| 12 | that point I don't remember, because she discussed | 03:28 |
| 13 | that with Danny, I guess. | 03:28 |
| 14 | Q. Okay. Well, that was in 2021, not 2020, | 03:28 |
| 15 | correct? | 03:28 |
| 16 | A. No, that was in 2020. | 03:28 |
| 17 | Q. Okay. And did she tell you in 2020 that | 03:28 |
| 18 | she was going to go to a lawyer to get this situation | 03:28 |
| 19 | fixed with trademark registration for SKU? | 03:28 |
| 20 | MR. KESHISHIAN: Objection. Vague and | 03:28 |
| 21 | ambiguous. | 03:28 |
| 22 | THE WITNESS: Yes. Yes. She notified me and | 03:28 |
| 23 | I told her to go ahead and pay the paperwork. | 03:28 |
| 24 | Q. (BY MR. GOLD): Okay. So you knew in | 03:28 |
| 25 | 2020 -- before December 2020 that there was a problem | 03:28 |

|   |   |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | I, Amber S. Williams, CSR NO. 1080, |
| 3 | Certified Shorthand Reporter, certify: |
| 4 | That the foregoing proceedings were taken |
| 5 | before me at the time and place therein set forth, at |
| 6 | which time the witness was put under oath by me. |
| 7 | That the testimony and all objections made |
| 8 | were recorded stenographically by me and transcribed |
| 9 | by me or under my direction. |
| 10 | That the foregoing is a true and correct |
| 11 | record of all testimony given, to the best of my |
| 12 | ability. |
| 13 | I further certify that I am not a relative |
| 14 | or employee of any attorney or party, nor am I |
| 15 | financially interested in the action. |
| 16 | IN WITNESS WHEREOF, I set my hand and seal |
| 17 | this 21st day of September, 2022. |
| 18 |   |
| 19 |   |
| 20 | *[signature: Amber S Williams]* |
| 21 | AMBER S. WILLIAMS, CSR NO. 1080 |
| 22 | Notary Public |
| 23 | Post Office Box 2636 |
| 24 | Boise, Idaho  83701-2636 |
| 25 | My commission expires June 1, 2027 |

Page 210