1
2
3
4
5
6

Yana G. Henriks, Esq. (SBN 250638)
Email: yhenriks@law-mh.com
**McMURRAY HENRIKS, LLP**
811 Wilshire Blvd., Suite 1640
Los Angeles, California 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
Attorneys for Plaintiff and Counter-Defendants,
SKU Diamond Jewelry, LLC, and Orit Cohen

7
8
9

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

10
11
12
13
14
15
16
17
18

RONEN COHEN, an individual; ORIT COHEN, an individual; and SKU DIAMOND JEWELRY, LLC, a California limited liability company,

          Plaintiffs,

    v.

SHIRLEY SULEMINIAN, an individual; SKU JEWELRY COMPANY, a California Corporation; and KAYLEE AND ROSE, INC., a California Corporation,

          Defendants.

Case No. 2:21-cv-08597-SSS-ASx

*Hon. Sunshine S. Sykes – Crtrm 2*

**DECLARATION OF YANA HENRIKS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR ATTORNEY FEES PURSUANT TO THE COURT'S NOVEMBER 3, 2023 ORDER**

19
20
21
22
23
24
25
26

SHIRLEY SULEMINIAN, an individual,

          Counterclaimant,

    v.

RONEN COHEN and ORIT COHEN, individuals,

          Counter-Defendants.

27
28

## DECLARATION OF YANA HENRIKS

I, Yana Henriks, hereby declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California and am admitted to practice law before the Federal District Courts for the Central District of California. I am the attorney of record for Plaintiffs SKU Diamond Jewelry, LLC, and Orit Cohen in the above-entitled matter. I have personal knowledge of the following facts and if called upon to testify under oath, I would and would do so competently to the following facts.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the Transcript of Proceedings from the November 3, 2023, hearing in this matter.

3.     On October 10, 2023, I had surgery on my elbow. I attached a letter from my surgeon in a previous declaration (Dkt. No. 91, Exhibit 1.)

4.     When the Court's October 17, 2023, directive to appear in-person was issued, I mistakenly believed that I had been recovering well and would be able to make the drive from Los Angeles to Riverside despite my limitations.

5.     Further, given that this action had been contentious, and Defendants had requested nearly $13,000 in sanctions against my clients and I, I believed it would be important to personally appear rather than send an associate or try to call in where there could be communication issues.

6.     On October 20, 2023, I left for the hearing around 11:00 a.m., but suffered an unforeseeable medical emergency wherein the stitches on my elbow opened and began bleeding through the bandage.

7.     I was in significant pain, and was forced to reroute, stop at a pharmacy, and re-dress my surgical incision.

8.     I feared that it would be dangerous to keep driving without stopping and that doing so would set back my recovery, or worse, undo the benefits of the procedure. In fact, I am still suffering complications from this incident.

///

DECLARATION OF YANA HENRIKS ISO OPPOSITION TO DEFENDANTS' REQUEST FOR ATTORNEY FEES

9.    I called an associate at my office to explain the situation and see if he could reach the Court to inform them that I would be late or to see if I could appear remotely.

10.    I pressed on through the pain and was forced to drive slower than usual in an abundance of caution, and still arrived at the Courtroom seeking to personally apologize and explain what had happened. When I arrived in Court, my wound dressing had already bled through again.

11.    Attached hereto as **Exhibit 2** is a true and correct copy of the Court's tentative ruling Striking Defendants' Motion to Dismiss the Third Amended Complaint.

12.    The opening of my stitches could have happened even if I had incurred the additional expense of staying at a hotel the night before the hearing.

13.    I had never previously met Mr. Keshishian or Ms. Jensvold-Rumage in-person and substituted as lead counsel from Geoffrey M. Gold of Ervin Cohen & Jessup LLP on or about August 11, 2023.

14.    Despite the ad hominem attacks made against me and Defendants' request for sanctions, I still instructed an associate in my office to grant three discovery response extensions to Defendants' counsel, Andre Boniadi, who is counsel for Defendants in the separate state court actions that Defendants raised during the hearing. I would prefer not to employ the same tactics used by Defendants' counsel here and to comply with the rules of civility.  Attached hereto as **Exhibit 3** is a true and correct email chain between my office and Andre Boniadi, who is listed on Defendants' captions as counsel of record here.

15.    I again sincerely apologize to the Court and opposing counsel for the inconvenience, but unfortunately this incident happened and could not be prevented.

///

///

///

DECLARATION OF YANA HENRIKS ISO OPPOSITION TO DEFENDANTS' REQUEST FOR ATTORNEY FEES

1    I declare under penalty of perjury under the laws of the United States that the

2    foregoing is true and correct to the best of my personal knowledge.

3         Executed November 15, 2023, in Los Angeles, California

4

5                                      By:    ____/s/ Yana G. Henriks____

6                                              Yana G. Henriks, Esq.
                                               Attorney for Plaintiffs
7                                              Orit Cohen and SKU Diamond
                                               Jewelry, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF YANA HENRIKS ISO OPPOSITION TO DEFENDANTS' REQUEST FOR
ATTORNEY FEES

# Exhibit 1

1                       UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4   RONEN COHEN, et al.,            ) Case No. LA CV 21--08597-SSS
                                    )                        (ASx)
5            Plaintiffs,            )
                                    ) Los Angeles, California
6   vs.                             )
                                    ) Friday, November 3, 2023
7   SHIRLEY SULEMINIAN, et al.,     )
                                    ) (2:54 p.m. to 3:37 p.m.)
8            Defendants.            )
    _____)

9

10                      TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE SUNSHINE S. SYKES
11                   UNITED STATES DISTRICT JUDGE

12

13  Appearances:                    See next page.

14  Court Reporter:                 Recorded;CourtSmart

15  Courtroom Deputy:               Irene Vazquez

16  Transcribed by:                 Lorraine Caldwell
                                    Echo Reporting, Inc.
17                                  9711 Cactus Street
                                    Suite B
18                                  Lakeside, CA 92040
                                    (858) 453-7590
19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

2

1   APPEARANCES:

2   For the Plaintiffs:              YANA G. HENRIKS, ESQ.
                                     McMurray Henriks LLP
3                                    811 Wilshire Boulevard
                                     Suite 1640
4                                    Los Angeles, California 90017
                                     (323) 931-6200
5
     For the Defendants:            MILORD A. KESHISHIAN, ESQ.
6                                    Milord Law Group P.C.
                                     333 South Hope Street
7                                    Suite 4025
                                     Los Angeles, California 90071
8                                    (310) 226-7878

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   Los Angeles, California; Friday, November 3, 2023 2:54 p.m.

2                              --o0o--

3                       (Call to Order)

4          THE COURT:  Okay.  Good morning -- I'm thinking

5   it's still morning.  It's been a long day.  Good afternoon.

6          MR. KESHISHIAN:  Good afternoon, your Honor.

7          MS. HENRIKS:  Good afternoon.

8          THE COURT:  Calling Case Number CV 21-8597, Ronen

9   Cohen, et al. versus Shirley Suleminian, et al.

10          If I can please have counsel state their name for

11   the record.

12          MS. HENRIKS:  Good afternoon, your Honor.  Yana

13   Henriks for SKU Diamond Jewelry, LLC, and Orit Cohen.

14          THE COURT:  Okay.  Good afternoon.

15          MR. KESHISHIAN:  Good afternoon, your Honor.

16   Milord Keshishian on behalf of all Defendants.

17          THE COURT:  Okay.  So we're here today for several

18   hearings.  One is a motion to dismiss.  I think you all have

19   been provided with my tentative as to that.  And then we

20   also have an OSC hearing as to Ms. Henriks, for your failure

21   to appear at the last hearing.

22          So why don't we just handle the Court's -- the

23   motion to dismiss and the Court's tentative first, and then

24   we can move on to the OSC hearing.  So let's start with

25   that.  You all had the opportunity to review it?

4

1          MS. HENRIKS:  Yes, your Honor.

2          THE COURT:  Okay.

3          MR. KESHISHIAN:  Yes, your Honor.

4          THE COURT:  Okay.  And would you like to be heard

5   on that?  Let's start with Plaintiff's counsel.

6          MS. HENRIKS:  Your Honor, thank you.

7          THE COURT:  I'm going to have you stand and go to

8   the podium when you speak.

9          MS. HENRIKS:  Yes.  Your Honor, I reviewed the

10  tentative, and thank you very much for a thoughtful

11  tentative.  We have nothing more to add, other than we agree

12  with the Court's position.

13         THE COURT:  Okay.  Thank you.  You can be seated.

14         And then, Counsel, on behalf of Defendant?

15         MR. KESHISHIAN:  Thank you, your Honor, for the

16  tentative, but we do not believe that the Court made a

17  mistake in dismissing the second amended complaint.  We

18  actually filed a motion for clarification to determine what

19  rights remained, and rights did not remain in Orit, because

20  trademark law is based on use, and that's how use is

21  established.  How the trademark rights are established are

22  based on the application of the trademark to a product that

23  you sell.

24         The second amended complaint tried to outfox

25  themselves by trying to preserve these registrations that

5

1  were invalid, so they said, "We're going to assign all

2  rights from the LLC to Orit in her personal capacity," but

3  Orit in her personal capacity does not actually sell any

4  goods.  All the rights to any trademarks that may have

5  existed inured --

6         THE COURT:  Well, you need to be clear when you

7  speak about common-law trademarks and registered trademarks,

8  and I think that was the issue with this Court issuing the

9  tentative decision, is that, in the prior rulings, in the

10 prior iterations of the complaints, in the prior briefing,

11 there was this, you know, merging of the two, and failure to

12 distinguish between each, and that's where I feel that we

13 got to this place that I've addressed and tried to clear up

14 in the tentative.

15        MR. KESHISHIAN:  Right.  The registrations are

16 invalid and void, so I'm only talking about common-law

17 rights.

18        THE COURT:  Okay.

19        MR. KESHISHIAN:  And with respect to the

20 common-law rights, common-law rights only arise and inure to

21 the benefit of the company or the person that's actually

22 using the mark.  Orit doesn't stand on the corner of a

23 street and sell jewelry.  She doesn't use the mark.  The

24 only company that used the mark was the LLC, and I'm talking

25 about common-law rights.

6

1          So, when they were trying to preserve their
2  registrations, what they did was try and assign the rights
3  to the LLC to Orit in her individual capacity, in the second
4  amended complaint, and the Court correctly dismissed the
5  second amended complaint with prejudice against Orit,
6  because Orit wasn't using these common-law rights and the
7  SKU marks in her individual capacity.  So, when the
8  registrations were void, and when Orit's individual rights
9  were also held to be invalid and void, there was nothing for
10 the LLC to bring.

11         That's why we filed the motion for clarification
12 as to what rights the LLC could bring, and Plaintiffs
13 opposed, saying, "No, it's very clear."  It wasn't clear,
14 and the reason why we brought it was because the LLC didn't
15 have any common-law rights to bring, since it assigned it to
16 Orit, and Orit, at this juncture, didn't have any common-law
17 rights to bring, because she never used the trademark in her
18 individual capacity.

19         THE COURT:  Okay.  And anything further in regards
20 to the tentative?

21         MR. KESHISHIAN:  That's all, your Honor.

22         THE COURT:  Okay.  I'm going to give you the
23 opportunity to respond, if you'd like.

24         MS. HENRIKS:  Yes, your Honor.  Thank you for the
25 opportunity.  I disagree with counsel's statement of law

7

1  that the assignment cannot be valid if it's assigned to the

2  person in individual capacity because Orit is not standing

3  on a corner and in a jewelry business or selling jewelry.

4           Just example, just out of -- and this is a -- I'm

5  kind of unprepared to give a correct citation, but I can

6  bring an example of a case that I handled.  It's a case

7  related to trademark or --

8           THE COURT:  And I'm going to stop you just for a

9  second because, you know, there's a lot that has gone on in

10  this case amongst the different amended complaints, the

11  briefing, the complaints, some of the allegations within the

12  complaints changing, so on and so forth.

13           So, when counsel for Defendant -- when you -- when

14  you're arguing what you brought up to the Court, I don't

15  necessarily believe it may address the tentative, insomuch

16  that, even if the Court were to adopt this tentative, then

17  another complaint would have to come, and that would allow

18  you to essentially make the arguments that you just made

19  here today.

20           And I'm sorry.  I'm interrupting you because I

21  wanted to -- what you said just made me think of what

22  counsel had said.  So isn't kind of what you've argued today

23  to me something you would necessarily be able to bring up if

24  you were to file a motion to dismiss, once Plaintiff

25  would -- is anticipated to file a fourth amended complaint,

8

1  let's say?

2          MR. KESHISHIAN:  I believe, your Honor, we

3  addressed that issue in dismissing the second amended

4  complaint, because we said Orit doesn't have common-law

5  trademarks, because she never used the common-law trademarks

6  in her individual capacity, and that's why the registration

7  was invalid, and that's why there was no common-law rights.

8          THE COURT:  Okay.

9          MR. KESHISHIAN:  So that's why -- I didn't mean

10 to --

11         THE COURT:  And do you have that argument -- or,

12 sorry, do you have the opposition -- sorry.  Do you have the

13 motion to dismiss where you're saying you made those

14 arguments?

15         MR. KESHISHIAN:  The second amended complaint,

16 your Honor?

17         THE COURT:  Yes.

18         MR. KESHISHIAN:  I do not --

19         THE COURT:  Do you have that with you?

20         MR. KESHISHIAN:  I do not have it in front of me,

21 because I thought we were arguing --

22         THE COURT:  No, I was just -- you know, I just

23 wanted to be able to back and look at that, to see if that

24 argument was made.  I think I may have it here.  Just hold

25 on one second.

9

1        Well, while I'm looking, if you want to go ahead,
2  Ms. Henriks.

3        MS. HENRIKS:  Yes.  Thank you, your Honor.  As a
4  matter of interpretation of law, I disagree with counsel's
5  argument, and the case that I personally handled was related
6  to a mark, Cochran mark, Johnnie Cochran lawyer's trademark.
7  I was involved in a Ninth Circuit appeal, and that case was
8  arising out of Johnnie Cochran's name being trademarked, and
9  after Johnnie Cochran passed away, his trust, his family,
10 basically, apparently, according to the terms of the
11 documents passed on to the estate.  The estate consisted of
12 non-lawyers.  They're not practicing law.  After two years
13 passing, after passing of Johnnie Cochran, that estate
14 assigned the rights to the name to Alabama corporation that
15 named Cochran Firm Alabama.

16       So the dispute was same argument, that whether the
17 assignment was valid, because the estate does not practice
18 law, similar argument, and that was not availing argument,
19 because you can't assign rights to the name.  SKU Diamond
20 Jewelry, LLC, is a one-person LLC.  Shirley -- I mean, Orit
21 Cohen has right to form another entity and use the name in
22 another entity.  Whether she sells jewelry or not, that's
23 not even on the face of the complaint.  It's not -- it's a
24 question of fact.  It's certainly inappropriate for a 12(b)
25 motion to determine and allegations to be accepted as true.

1        What I think the problem in this case is that

2  Defendants are trying to get out from the separation

3  agreement.  That's very clear, and they're trying to get out

4  from this contractual obligation by mere raising

5  technicalities.  I believe the Court's tentative is correct,

6  and, of course, I am new in this case.  I reviewed the file.

7  There are so many back-and-forth, you know, arguments,

8  pleadings raised.

9        It's a little bit confusing, but I'm getting --

10 trying to get the clear picture, and I do agree that the

11 Court's tentative is correct that Orit Cohen has to be back,

12 since she absolutely has standing to maintain claim under

13 Lanham Act, and I am prepared to file an amended complaint,

14 an dif counsel has anything other than -- I mean, he has an

15 argument.  Obviously, we're going to have another round of

16 motion to dismiss, but I'm hoping at some point this will

17 stop, because I'm ready to bring a summary judgment motion

18 and to reaffirm the validity of a separation agreement.

19        THE COURT:  Okay.  Thank you.

20        I am going to take this matter under submission

21 based upon the arguments that were made here today by

22 counsel, but, also, I want to just advise counsel for

23 Plaintiff if, in fact, I remain with my tentative and allow

24 you to file a fourth amended complaint, some of the concerns

25 that were raised within the motion to dismiss the third

11

1 amended complaint are valid concerns.

2         I think a lot of the concerns that were addressed
3 by the Defendant in the motion to dismiss could easily be
4 cleared up by properly citing to the Lanham Act and the
5 specific sections of the Lanham Act you believe address any
6 interest in common-law trademark claims, because I think
7 it's clear by looking at the act there are certain sections
8 that may, or that do, and certain sections that don't, and
9 so part of the issue, I think, with the motion to dismiss is
10 that the counts essentially cite to portions of the Lanham
11 Act that don't apply to the counts, to the actual
12 allegations within those counts.

13         So count one has extraneous citations to the
14 Lanham Act that wouldn't apply, count two the same, and so I
15 would advise you that, if you do file a fourth amended
16 complaint, that you do heed to some of the concerns that
17 were raised by the motion to dismiss as valid concerns, and
18 concerns that, in my mind, beyond the legal argument or the
19 dispute as to whether, you know, there are common-law claims
20 within the Lanham Act, which is really a legal argument, the
21 rest of the concerns by Defendant could have easily just
22 been cleared up with a simple agreement, meet and confer,
23 agree, "Yes, that's right.  Let me go ahead and change that,
24 amend that."  Defendant says, "Yes, change that," and there
25 would be no need for any motion to dismiss.

12

1          But I understand that there is a legitimate

2     dispute as to the common-law claims.  I've addressed that in

3     the footnotes of the tentative, this Court's thought on

4     that, but I think, if you're given the opportunity to file a

5     fourth amended complaint, then it should be, at this point,

6     crystal clear what provisions of the Lanham Act that you

7     would be suing under.  So, okay.

8          MS. HENRIKS:  May I address one thing, your Honor?

9     I just wanted to make sure, so we don't run into the

10    problem.  The only thing -- the ambiguity for me is the

11    caption, my understanding that there has to be -- clerk has

12    to correct the caption.  I mean, the Defendants demand that

13    Ronen Cohen is omitted from the caption, and if the Court

14    can issue the order, I can change the caption.

15         THE COURT:  This Court is not going to issue any

16    order changing any caption.  This Court never does that.  It

17    doesn't matter if people are dismissed.  We're not going to

18    go back in and change the caption every time someone is

19    dismissed.  That would just be an unworkable requirement,

20    for this Court to go back and forth, depending on who's

21    dismissed, who's left in.  The case name remains the case

22    name, regardless of who's in or who's out.

23         MS. HENRIKS:  I understand, and, your Honor, my

24    apologies.  Your Court's comment is well taken.  I'll make

25    it very clear, and I'm now on the case.  I took over from

13

1 another counsel, and I'll do my best in a fourth amended

2 complaint.  Thank you.

3          THE COURT:  Well, I am taking the matter under

4 submission, so I'm still going to consider -- I'm going to

5 go back and look at those arguments in the motion to dismiss

6 the second amended complaint, just to make sure I'm certain,

7 and then issue a decision subsequent to that.  So I will

8 take the motion to dismiss under submission.

9          MR. KESHISHIAN:  If I may address the <u>Johnnie

10 Cochran</u> case, your Honor?

11          THE COURT:  Excuse me?

12          MR. KESHISHIAN:  If I may address the <u>Johnnie

13 Cochran</u> case?

14          THE COURT:  I don't -- you can briefly do it.  I

15 don't think it's necessary.  That fundament wasn't

16 persuasive one way or another, because I don't even quite

17 think we're there.  I think it may be something that you may

18 want to address in the future, if I were to allow a fourth

19 amended complaint, but as far as it's going to change my

20 mind about whether to allow it or not, I don't think it's

21 necessary.  So, okay.

22          So I'll leave you there, Ms. Henriks, in regard to

23 the OSC hearing.  I did receive your declaration, and, you

24 know, I don't -- noticeably absent, I guess, from your

25 declaration is when you started your drive to Riverside.

14

1          MS. HENRIKS:  It was about 11:00 o'clock I
2   started, and, your Honor, today I'm still not well enough,
3   although I don't wear the sling, but I had somebody that's
4   in the courtroom.  They drove me here.  I profusely
5   apologize to the Court and to counsel.  I just
6   underestimated the procedure itself.
7          I was feeling better, but, once I started driving
8   and started moving my elbow, it was just a situation that it
9   was dangerous for me, for somebody on a public -- I really
10  needed to take care of that.  I was in a lot of pain.  I
11  wanted to come and apologize in person.  I had to stop,
12  rest, but I actually came to court and saw your Honor's
13  clerk, but it was too late already, and I apologize.  It was
14  my mistake.  It was something that I just didn't really how
15  serious -- what procedure that I had, and the impact of
16  long-distance driving would make.
17          THE COURT:  Well, you know, this Court, on a
18  Friday morning, Friday afternoon, coming from L.A., it's --
19  was that the phone?  Just make sure to turn off any phones,
20  please, altogether.
21          You know, it's going to take time, and I think a
22  diligent, prudent attorney would make sure to get here with
23  enough time, even if that means leaving at 8:00 in the
24  morning, 9:00 in the morning, so that you get here without
25  having to rush, maybe grab a bite to eat, go get a coffee,

15

1  and ensure yourself that you're going to be here on time.

2  Counsel was here.  I think counsel was here even a little

3  early.  The Court was here.  We were all here waiting, and

4  there was nothing preventing you as well from informing the

5  Court of your situation.

6         I understand that I ordered that you all appear --

7  or the text entry was issued the same week of the hearing,

8  but I've had circumstances in which I've ordered attorneys

9  to appear because there's something within the papers that I

10  need them to come in person.  I wanted you to be here in

11  person because I had -- based upon what was presented in the

12  motion to dismiss, the request for sanctions, all of the

13  above, I was just going to give you all some guidance, have

14  you go out in the hall and kind of try to meet and confer on

15  several issues.

16         So the way I thought the day was going to go, and

17  the way I anticipated the day to go, didn't occur because,

18  of course, you weren't here, but I've had attorneys who,

19  when I've issued an order that they appear in person, would

20  just either, one, file an ex parte saying, you know, "I have

21  a sling on my arm.  I just went to surgery.  Is there a way

22  we can postpone the in-person until I'm fully recovered, or

23  is there a way for me to appear via Zoom?," and just, you

24  know, have the courtesy to let the Court know what your

25  circumstances are.

16

1          I find myself to be a reasonable person.  If I

2    would have known that you were going through those

3    circumstances, then I would have tried to accommodate you,

4    and I would expect that defense counsel would have preferred

5    for me to accommodate you because of your situation than

6    driving all the way from L.A. and sitting here for no

7    reason, and returning back to L.A.  So that could have been

8    done via ex parte, or it could have been done by just making

9    a phone call to my courtroom deputy and saying, "Look.  I

10   just got this order.  You know, this is what's going on."

11   You know, does this Court -- would this Court's practice

12   require me to do an ex parte?  What's this Court's practice,

13   because it's going to be really difficult for me to get

14   there?"  So that would have been another option.

15          The third option is getting someone to drive you,

16   just like you did today.  The fourth option would be to

17   leave super early, to make sure that there's plenty of time

18   to rest, if you needed to, along the way.  A fifth option

19   may be coming the night before.  I mean, there's a multitude

20   of ways in which you could have either let the Court know of

21   your situation or made attempts to be here on time.  It

22   wasn't as if it was a surprise that you had surgery, or a

23   surprise that your arm was in a sling.

24          So that's the concerns I have, is, even though I

25   understand, you know, the difficulty of driving here,

17

 1  perhaps with, you know -- and I've read your declaration, so
 2  what you had to, what you had experienced.  I think there's
 3  other ways you could have handled it that would have
 4  resulted in us not -- you know, you not wasting the Court's
 5  time, you not wasting defense counsel time, and you not
 6  wasting, really, your own time of coming all the way out
 7  there for no reason.

 8          As far as the sanctions are concerned, you know,
 9  the fact of the matter is, is that counsel -- defense
10  counsel had to -- came all the way out here for no reason.
11  So I think it is -- because there's so many other ways you
12  could have handled it, that you didn't, I don't think
13  defense counsel should be put out of their time or their
14  costs in coming all the way out here for no reason, and, as
15  you know, because you experienced it today, he experienced
16  it twice now, coming out here, one, for no reason, and now
17  to actually hold this hearing today.

18          So, as far as any sanctions are concerned, I am
19  going to sanction you.  I set this matter for sanctions for
20  failure to appear, sanctions to the Court, as to whether or
21  not you should also pay counsel's attorney fees and costs.
22  As to sanctions to the Court for your failure to appear at
23  the last hearing, I am going to sanction you $250 for
24  failure to appear at the last hearing.  I had set this
25  matter for -- I believe it was not to exceed $1,000, but I

18

1  think, based upon your circumstances, based upon your

2  injury, and all of that that I just indicated, I think $250

3  is a sufficient amount for this Court, probably less than

4  sufficient, but I'm going to sanction you for $250.  That's

5  to be payable to the Clerk of Court within 30 days of

6  today's date.

7          As to any sanctions -- as to why you should not

8  have to pay attorney fees and costs, I'll give you the

9  opportunity to address that, if you'd like, as well.

10          MS. HENRIKS:  Your Honor, to the first comment

11  that the Court made, it is well taken that, you know, I

12  could have filed, you know, ex parte.  However, I only got

13  two days' -- it was a two days' notice that I had from ECF

14  notification that the Court wants us in person.  By that

15  time, right, day before, I had a post-op visit, and the

16  doctor advised me that I can take off the sling, and I

17  truly, in good faith, was feeling better.

18          I didn't understand, or at least it wasn't

19  explained properly to me, that since my incisions were right

20  on my elbow area, if I have too many movements, my incisions

21  can come apart.  So, when I left -- and I think I've came to

22  this court before.  I've appeared before Judge Bernal, and

23  I've never had an issue.  I felt it was sufficient time.  I

24  didn't expect in any way that incision is going to come -- I

25  mean, literally, I start bleeding -- since it was sufficient

19

1 time, and I thought it was healed.  So this is something as

2 similar I could have been hit by the car.  I had no idea

3 that this could happen, and I still -- as of now, I have a

4 blood clot, because it's blood, and now it's formed a blood

5 clot.

6          It happened, but I also wanted to stress upon the

7 contentious nature of this whole dispute.  Many things could

8 have been resolved if meet and confer was really done

9 properly, in a civil manner, right?  I get an e-mail that

10 you've mailed me, two hours.  I am a partner at the firm.

11 We could have resolved all of those things without making

12 everything so contentious, and I apologize again, but

13 sometimes -- it just happened, and yes, I just had no way

14 knowing that this was going to happen, since it's a first

15 time, and nobody told me that having incision in that area,

16 once I remove my sling, they may open up.

17          I was in a car.  You know, I could have at least

18 called, I guess, say that I was bleeding, but I was still

19 trying to make to the hearing, and I was trying to show my

20 respect by -- I was in a lot of pain.  I still got to the

21 court, and wanted to apologize.  So I want to say I'm sorry,

22 but this is not a motion that we filed, and it happened, and

23 I hope counsel can understand.

24          THE COURT:  Okay.  Thank you.

25          MS. HENRIKS:  Thank you.

20

1        THE COURT:  Counsel for Defendant, would you like

2   to be heard on the sanctions, as far as your fees and costs?

3   I don't know your thoughts on that.  If you've heard her

4   apology, you know the circumstances.  I'd like to hear from

5   you.

6        MR. KESHISHIAN:  I think it was -- the sanctions

7   were fine until she tried to blame us for the issues that

8   arose during the meet and confer conference.  She was late

9   to that conference, and we e-mailed her a number of times.

10  She didn't respond.  So I would have -- I think the client

11  would have understood and allowed it to go, but I don't

12  think we appreciate being thrown under the bus for her

13  conduct.

14        THE COURT:  Well, I think it's clear to this Court

15  that you all don't get along.  Who it is, who it's not, you

16  know, I try not to have to put myself in the middle of that,

17  because there's nothing, really, more, I think, that a judge

18  doesn't like than to have people appear in front of them

19  that don't get along.

20        It just makes it more complicated, because I don't

21  know you.  I don't know either of you.  And especially in

22  this case, there's the completely differing accounts of what

23  happened, so it puts me in a position of, okay, who do I

24  believe, just by virtue of reading something on a page,

25  right?  Because I don't know either of you.

21

1    So I don't personally like being in that position

2  at all, and that's one of the reasons why last week I wanted

3  to have you both here, so that I could kind of explore that

4  a little, have you all go out in the hall, try to work

5  things out, because having such tension between, you know,

6  the attorneys just is -- it's more work for everyone.  It's

7  more stress for everyone.  It causes more writing for

8  everyone.  It causes more, typically, brief writing, and

9  just, I think, more importantly, just stress that -- I think

10  we all live with enough stress than having to have stress in

11  our daily lives, but then have to have stress in your work

12  life and your personal life, whatever that may be.

13    But certainly I don't like being put in a position

14  where I have to kind of decide who the bad actor is, let's

15  say, because, typically, you really can't see that, from,

16  you know, writing, unless it's very explicit in some e-mail

17  that's just outrageous.  That makes it very clear.  But, in

18  this case, you know, that was the conversation I wanted to

19  have with you all, is just to, you know, see what you can do

20  to get along.

21    There's going to be disagreements over the law.  I

22  mean, that's just how it is, and that's why we all have

23  jobs.  If we all agreed on the law, then we wouldn't be

24  here.  But, you know, conducting and acting and holding

25  yourselves in a professional manner is, you know, what the

22

1  expectation is, is to, you know, follow the Rules of

2  Professional Responsibility, be civil to each other, be

3  gracious to each other, you know, try to not make it harder

4  for each other.  You're going to have disputes, like I said,

5  about the law.  You're going to have disputes about

6  discovery, but it doesn't have to be personal.  That just

7  causes more stress.  So what I'm --

8         MR. KESHISHIAN:  No, your Honor.  We didn't have

9  any disputes with former counsel.  We were getting along

10 fine.  But I think she mentioned that this has been a

11 contentious case, and this is not the only case that the

12 parties have amongst each other.  I'm just involved in the

13 trademark case, but I understand in the state cases, where

14 there's a restraining order against the Cohens, against our

15 client, for assaulting them -- I understand that, and

16 there's an actual criminal case.

17        So I think this is being brought from the state

18 court case into this case, that we have nothing to do with

19 the state court cases.  So Ms. Henriks, I understand,

20 represents them in the state court cases, and there are

21 complaints down there against her, and I think she's just

22 trying to bring this into this situation, and we have done

23 nothing wrong with former counsel.  We got along with former

24 counsel, and this is a situation that has happened, and I

25 understand what you're saying, your Honor, and we're being

23

1  civil as much as we can.

2          THE COURT:  Well, regardless of what, you know,

3  happened in the state case, regardless of, perhaps, the

4  clients not getting along, you know, the clients not getting

5  along is one thing, but, you know, the expectation of the

6  Court is that the attorneys are going to, you know, rise

7  above that, you know, not go play in the mud, and I'm not

8  saying the clients are or not.  I'm just saying if -- I'm

9  assuming they're not getting along.  I have no evidence of

10 that, but, you know, hypothetically speaking, if your

11 clients hate each other, that doesn't mean the attorneys

12 have to hate each other.

13         If your clients want to make it different for each

14 other, and one of your clients is saying, "You need to do

15 this.  You need to go after them," and the other client is

16 saying, "You need to do this.  I want to make them pay," you

17 know, as attorneys, that's your job, is to say, you know,

18 "Look.  This is not going to make you look good in the eyes

19 of the Court.  This is not going to make you look good in

20 the eyes of the Court."

21         The Court wants cooperation.  The Court wants at

22 least the attorneys to be civil, to work together.  You

23 know, ultimately, the case is going to be decided either in

24 a jury trial by the jurors, it's going to be decided by

25 itself in a court trial, it's going to be decided through a

24

1 motion for summary judgment.  However it may be decided,

2 it's not personal when the law is involved.  Legal issues

3 aren't personal.

4          So it may be something where you all just need to

5 talk to your clients and say, "Look.  You know, I'm not

6 going to be doing this because you can't get along with this

7 person.  I'm going to -- this is my job.  I'm supposed to be

8 civil.  I'm supposed to be cooperative.  I'm supposed to

9 work together," to ultimately get to this final important

10 point in the proceedings where someone is going to make a

11 decision about who's right or wrong on the law, not about

12 whether Plaintiff is a bad person, Defendant is a bad

13 person, you know, whatever.  It's not a matter of

14 personalities or anything of that nature, and I know I'm

15 talking you because -- you all know this, but you're the

16 ones in control of your clients, and you're the ones in

17 control of actually what's filed and what's opposed, or

18 what's agreed to.

19          So what I'm saying is just to remember that, and

20 to give each other some grace sometimes, you know,

21 regardless of what that is, and, you know, I understand your

22 position.  I understand your position.  I'm not going to go

23 play in the mud, and I don't think you all should, either,

24 because, as you both know, reputation, in this profession,

25 is everything, and I certainly think that you all need to

25

1  get along.  You all need to work together and do the best

2  that you can to make it through this case.

3        So, with that, as far as any -- as far as the OSC

4  hearing in regards to sanctions for fees and costs, what I'm

5  going to do, Counsel -- since it seems as if you were okay

6  with not having them, but then you were like, "Well, maybe I

7  do want them," what I'm going to do is give you the

8  opportunity to provide to me your fees and costs for

9  attending last week, and I am going to give you that

10 opportunity to show me what those fees and costs are, and

11 then I'll make a decision as to whether or not to order

12 those fees and costs.

13        So I'm not going to make a decision until I

14 actually see them.  If, in the interim, you decide -- you

15 talk to your client, and you say, you know, "We're not going

16 to move for that," then you can file something to that

17 effect, saying, you know, "We're not seeking those fees and

18 costs for attendance."

19        So I'll leave that to you, but I will take that

20 matter under submission, as to the fees and costs.  I'll

21 order that any request for fees and costs pursuant to the

22 OSC that was set for today be filed on or before November

23 10th, which is next Friday.  Any response to the fees and

24 costs -- because I'll give you the opportunity to respond --

25 if you feel that those costs and fees, if he seeks them, are

26

1 unreasonable, will be filed by November 15th, and then I'll

2 just -- I just anticipate doing a written order, no hearing

3 on that.  And I think --

4          THE CLERK:  When are sanctions due by?

5          THE COURT:  Thirty days.  So did we have a date

6 for that?

7          THE CLERK:  I can get a date.  So December 4th.

8          THE COURT:  Okay.  So the sanctions due to the

9 Court, the Clerk of Court, are due by December 4th, in the

10 amount of $250.

11          Anything further in regards to this matter, these

12 matters we discussed today on behalf of Plaintiff?

13          MS. HENRIKS:  Yes, your Honor, if I may, please.

14 I've never met counsel in my life.  This is first time I see

15 him, never worked in opposing cases.  The problem with this

16 case is, when I reviewed references to restraining orders,

17 to statements --

18          THE COURT:  And I'm going to stop you because,

19 like I said before, I don't really, to be honest, care.

20 Like, I want you all to work it out.  I'm not going to be in

21 a position where I'm judging you or I'm judging him, and I

22 don't need to be in that position.  You're making me be in

23 that position.  And whatever problems you have -- or maybe

24 they're not problems.  Whatever you have that has caused

25 this conflict, it doesn't have anything to do with me having

27

1 to make a decision on the motion to dismiss.

2          As far as the sanctions are concerned, I don't

3 intend to issue any types of sanctions connected to the

4 motion to dismiss, and whether or not you all get along or

5 what -- you know, you want to respond to what he says, and

6 then he's going to want to come up and respond to what you

7 say, and then we're stuck in this, like, rabbit hole.  I

8 don't really want to hear any more about that.  If there's

9 something that you have in particular as far as the motion

10 to dismiss or the OSC hearing for failure to appear, then

11 I'll hear that, but, if it's beyond that, I don't want to

12 hear it.

13          MS. HENRIKS:  In my 16 years of practice, before

14 COVID, I've made personal appearances.  On the five

15 occasions, at minimum, opposing counsel didn't make it to

16 the hearing.  Never once I requested fees, and this is just

17 a professional incivility.  Me not getting here because of

18 my incisions opened up is the same as somebody getting hit

19 by the car.  For someone to demand to pay his hourly fee, I

20 think it's inequitable.  That's all I have.  Thank you, your

21 Honor.

22          THE COURT:  Okay.  And I think counsel -- I was

23 giving him the opportunity to readdress that.  So I'll give

24 him that opportunity.  So I'll leave your comment as it is.

25          On behalf of Defendant?

28

1          MR. KESHISHIAN:  Nothing further, your Honor.

2          THE COURT:  Okay.  Thank you.

3          MR. KESHISHIAN:  Thank you.

4          THE CLERK:  This matter is adjourned.

5      (Proceedings concluded.)

29

1          I certify that the foregoing is a correct

2   transcript from the electronic sound recording of the

3   proceedings in the above-entitled matter.

4

5   /s/Lorraine Caldwell                    11/14/2023

6   Transcriber                        Date

7   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8

9   /s/L.L. Francisco
    L.L. Francisco, President
10  Echo Reporting, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

# Exhibit 2

1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11   RONEN COHEN, et al.                    Case No. 2:21-cv-08597-SSS-AS

12                        Plaintiff,

13                                          **TENTATIVE ORDER
                                            STRIKING DEFENDANTS'**
14        v.                                **THIRD MOTION TO DISMISS
                                            [DKT. 85]**
15   SHIRLEY SULEMINIAN,

16                        Defendant.

17
         Before the Court is Defendants Kaylee and Rose, SKU Jewelry Company,
18
     and Shirley Suleminian's Motion to Dismiss the Third Amended Complaint (the
19
     "Motion"). [Dkt. 85]. On September 29, 2023, Plaintiff SKU Diamond
20
     Jewelry, LLC filed its opposition to the Motion (the "Opposition"). [Dkt. 86].
21
     Defendants filed their reply to the Opposition on October 6, 2023. [Dkt. 87].
22
     Based on the reasons below, the Court hereby **STRIKES** Defendants' Motion.
23
     **I.      BACKGROUND**
24
         This matter arises out of a conflict regarding who is the rightful holder of
25
     the rights to the marks associated with the SKU DIAMOND name. [Dkt. 83 at
26
     2]. As Plaintiff is now on its third amended complaint (the "TAC"), the Court
27

28

                                      -1-

1  notes that this case has a long and complex procedural history. The Court

2  summarizes the relevant procedural history below.

### A.     First Amended Complaint [Dkt.48]

4          On November 2, 2022, Plaintiffs Ronen Cohen and Orit Cohen filed the

5  first amended complaint alleging, in brief, that Suleminian willfully and

6  knowingly sold products bearing the SKU marks despite Suleminian having

7  transferred her rights to said marks to Orit Cohen via a separation agreement the

8  parties signed as part of the dissolution of a business venture. [Dkt. 48 at 2-4].

9  On November 22, 2022, Defendants filed their motion to dismiss as to the first

10 amended complaint. [Dkt. 51]. In it, Defendants argued Plaintiffs Orit and

11 Ronen Cohen's claims fail because Suleminian was the senior user of the mark.

12 *Id*. at 6. In their opposition to the motion to dismiss, [Dkt. 52], Plaintiffs

13 clarified, that Suleminian's "common law rights" in the SKU marks transferred

14 to SKU Diamond Jewerly, LLC when the entity was formed. [Dkt. 51 at 7].

15 This was the first-time allegations of rights to the common law marks were

16 clearly proffered by Plaintiffs Orit and Ronen Cohen.

17         In granting the first motion to dismiss, the Court clearly found SKU

18 Diamond Jewelry, LLC received the common law rights from Suleminian, and

19 that Plaintiffs' individual ownership of the SKU marks was invalid. [Dkt. 60 at

20 6–7]. The Court granted Plaintiffs leave to amend.

### B.     Second Amended Complaint [Dkt. 61]

22         On March 28, 2023, Plaintiff Orit Cohen, this time without Ronen Cohen,

23 filed her Second Amended Complaint (the "SAC"). In the SAC, Orit alleged

24 (1) on February 27, 2018, Orit and Suleminian formed SKU Diamond Jewelry,

25 LLC, (2) on that date Suleminian assigned SKU Diamond Jewelry, LLC her

26 rights to the common law marks, and (3) SKU Diamond Jewelry, LLC in turn

27 assigned the rights in the marks to Orit. [Dkt. 61 at 4–5]. Thus, in the SAC Orit

28 Cohen maintained she was the possessor of the rights to the common law SKU

1 marks by virtue of an assignment of said rights from SKU Diamond Jewelry,

2 LLC.

3   On April 11, 2023, Defendants filed their motion to dismiss the SAC.

4 [Dkt. 62].  In it, Defendants argued Plaintiff's allegations relating to common

5 law rights fail because Silver International, a different company, used the SKU

6 marks before, during, and after SKU Diamond Jewelry, LLC.  [Dkt. 62 at 16].

7 Defendants also contended, without citation or support, that Plaintiff's assertion

8 that SKU Diamond Jewelry, LLC assigned its common law rights to Orit need

9 not be accepted as true because "it contradict[ed] Plaintiff's judicial

10 admissions."  [Dkt. 62 at 19].  In her opposition, Plaintiff Orit Cohen

11 maintained that the Court must accept as true all factual matters in the SAC and

12 that the SAC "plausibly alleges that Shirley owned the common law rights in

13 the SKU mark."  [Dkt. 64 at 11].

14   In granting the motion to dismiss regarding the SAC, the Court found as

15 follows:

16
17   • Regarding the argument that Plaintiff Ronen Cohen assigned his

18    right to the SKU marks to Orit Cohen, that argument fails because

19    Orit Cohen is not a one-woman shop capable of being retroactively

    assigned the rights to a trademark.  [Dkt. 71 at 6–7].

20   • Regarding the argument that Plaintiff Ronen Cohen *nunc pro tunc*

21    assignment established an ownership interest in the word mark

22    "SKU Jewelry," that argument fails as well because the Ninth

23    Circuit only allows such assignments if the assignor and assignee

24    are functionally the same person or share an identity.  *Id.* at 8.

25   Importantly, both of the above findings were as to Plaintiff Orit Cohen's

26 allegations regarding the validity of the registered trademarks stemming from

27 the assignment from Plaintiff Ronen Cohen to Orit Cohen.  Neither of the

28 findings addressed claims arising out of the alleged assignment of the common

1   law rights from SKU Diamond Jewelry, LCC to Orit Cohen.  See Dkt. 71 at 6

2   (addressing Orit Cohen's argument that Ronen Cohen nunc pro tunc assigned

3   his rights to the SKU marks to Orit); Dkt. 71 at 8 (addressing the failure of

4   Ronen Cohen's assignment to establish an ownership interest in the word mark);

5   Dkt.61 at 2 n.1.  Thus, the Court's dismissal of the SAC was only in regard to

6   those claims arising out of the transfer of rights from Ronen Cohen to Orit

7   Cohen.

8   **II.     DISCUSSION**

9        **A.     The Dismissal of Orit Cohen with Prejudice**

10        In the Motion now before the Court, Defendants seek dismissal of the

11  TAC and move for sanctions partially because Plaintiff now alleges SKU

12  Diamond Jewelry, LLC has the common law rights to the SKU marks.  [Dkt. 85

13  at 7–9].  Defendants contend sanctions are warranted because such an allegation

14  clearly contradicts the assertion in the Plaintiffs' SAC that SKU Diamond

15  Jewelry, LLC assigned the common law rights to Orit Cohen.  *Id.*

16        After reviewing the lengthy and complicated procedural history of this

17  case, the Court finds, due to its inadvertence, it mistakenly dismissed Plaintiff

18  Orit Cohen with prejudice as to all her claims.  [Dkt. 71 at 9].  The Court's

19  dismissal with prejudice of Orit Cohen should have been only as to Cohen's

20  claims relating to the registered trademarks.  A close reading of the Court's

21  order, [Dkt. 71], shows the Court was analyzing the Parties' arguments relating

22  to the marks arising from the assignment from Ronen Cohen to Orit Cohen and

23  not the arguments relating to the marks arising from the assignment from SKU

24  Diamond Jewelry, LLC to Orit Cohen.  In fact, the Court notes that in its order,

25  rather than find that Silver International possessed the rights to the common law

26  marks, the Court explicitly reaffirmed that SKU Diamond Jewelry, LLC was the

27  recipient of the rights to the common law marks.  *Id.* at 9.

28

-4-

1       As such, the Court finds that it was mistaken when it dismissed Orit

2   Cohen with prejudice because Orit Cohen alleged in the SAC that SKU

3   Diamond Jewelry, LLC assigned its rights to the common law marks to her.  As

4   such, assuming all factual allegations in the SAC are true, the Court should have

5   found Orit Cohen retained standing to bring an infringement claim for violation

6   of her rights to the common law marks that she allegedly possesses by virtue of

7   the assignment from SKU Diamond Jewelry LLC to her.[1]

8   **III.   CONCLUSION**

9       Having reviewed all necessary documents, the Court hereby **STRIKES**

10  Defendants' Motion to Dismiss the Third Amended Complaint, Plaintiff's

11  Opposition, and Defendants' Reply. [Dkt. 85, 86, 87].  Moreover, finding

12  Plaintiff Orit Cohen should not have been dismissed with prejudice in full, the

13  Court hereby **orders Plaintiff to file a fourth amended complaint in which**

14  **Plaintiff is permitted to bring back Plaintiff Orit Cohen into the litigation**

15  **to litigate the causes of actions arising out of the common law marks only.**

16

17      **IT IS SO ORDERED.**

18

19  ────────────────────

20  [1] The Court also has reviewed the Motion. [Dkt. 85]. The Court would like all
    parties to be aware that, absent any additional authority from Defendants, the

21  Court believes the law is clear in that common law marks are assignable, and
    Plaintiffs may maintain a trademark infringement action for common law marks

22  under the Lanham Act. *See TAP Mfg., LLC v. Signs*, No. 2:25-cv-00797-SVW-
    PJW, 2015 WL 12752874, at *4 (C.D. Cal. July 23, 2015); *see also Kendall-*

23  *Jackson Winery, Ltd., v. E & J Gallo Winery,*, 150 F.3d 1042, 1047 n.7 (9th Cir.

24  1998) (noting "[r]egistration is not a prerequisite for protection under § 43(a)"

25  of the Lanham Act"); *Mortellito v. Nina of California, Inc.*, 335 F. Supp. 1288,
    1294 (S.D.N.Y. 1972) (noting "under the Lanham Act, it is not a prerequisite

26  that the mark be registered).  While 15 U.S.C. § 1114 only affords standing to

27  the registrant of a registered federal trademark, as Defendants concede,
    "plaintiffs with unregistered trademarks are protected by 15 U.S.C. § 1125.

28  [Dkt. 87 at 6].

1

2   DATED: September 1, 2023

3   _____
    SUNSHINE S. SYKES
4   United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 3

**Nolan Dilts (MMH)**

| | |
|---|---|
| **From:** | Nolan Dilts (MMH) |
| **Sent:** | Wednesday, November 15, 2023 10:45 AM |
| **To:** | Andre Boniadi |
| **Cc:** | Yana Henriks |
| **Subject:** | RE: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951 |

Hi Andre,

Per Ms. Henriks, as a professional courtesy the additional day is fine as long as ours is also extended by one business day to Monday the 20th.

Thanks,

Nolan Dilts, Esq.



811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com

---

**From:** Andre Boniadi <aboniadi@bzlegal.com>
**Sent:** Tuesday, November 14, 2023 10:58 AM
**To:** Nolan Dilts (MMH) <ndilts@law-mh.com>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Nolan, hate to do this but need just one more day for our discovery. In depo all day tomorrow and don't think I'll make it in time. Your deadline would extend by one day as well. Please confirm. Thanks.

Andre Boniadi, Esq.
**BEITCHMAN | ZEKIAN**
16130 Ventura Blvd., Suite 570
California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

---

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or

distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

On Nov 10, 2023, at 12:21 PM, Nolan Dilts (MMH) <ndilts@law-mh.com> wrote:

You too.  Thanks,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com

---

**From:** Andre Boniadi <aboniadi@bzlegal.com>
**Sent:** Friday, November 10, 2023 11:18 AM
**To:** Nolan Dilts (MMH) <ndilts@law-mh.com>
**Cc:** Yana Henriks <yhenriks@law-mh.com>; David P. Beitchman <dbeitchman@bzlegal.com>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Confirmed. Thanks and have a good weekend.

Andre Boniadi, Esq.
**BEITCHMAN | ZEKIAN**
16130 Ventura Blvd., Suite 570
California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

---

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

On Nov 10, 2023, at 10:37 AM, Nolan Dilts (MMH) <ndilts@law-mh.com> wrote:

Andre,

That is fine, provided it is reciprocal.  Please confirm that our deadline to serve supplemental responses is continued to November 17.

Thanks,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com

---

**From:** Andre Boniadi <aboniadi@bzlegal.com>
**Sent:** Thursday, November 9, 2023 5:18 PM
**To:** Nolan Dilts (MMH) <ndilts@law-mh.com>
**Cc:** Yana Henriks <yhenriks@law-mh.com>; David P. Beitchman <dbeitchman@bzlegal.com>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Hi Nolan,

Hope you're doing well.

We're requesting a two day extension to provide responses, bringing the new deadline to Nov. 15.  Please confirm if this is agreeable.

Best,


Andre Boniadi, Esq.
**BEITCHMAN | ZEKIAN**
16130 Ventura Blvd., Suite 570
California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

_____

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

On Oct 27, 2023, at 4:51 PM, Nolan Dilts (MMH) <ndilts@law-mh.com> wrote:


Andre,

Fine to sign and file the protective order.

May we also have a commensurate extension of our deadline to respond to discovery?  I have those calendared as due November 1, 2023, so we would request to November 15, 2023.

Please advise.  Thanks,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com

---

**From:** Andre Boniadi <aboniadi@bzlegal.com>
**Sent:** Friday, October 27, 2023 11:19 AM
**To:** Yana Henriks <yhenriks@law-mh.com>
**Cc:** Nolan Dilts (MMH) <ndilts@law-mh.com>; David P. Beitchman <dbeitchman@bzlegal.com>
**Subject:** RE: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Yana,

Thanks for confirming the extension.

Please find attached a standard Stipulated Protective Order.  Please advise as to whether we  have your authority to e-sign and e-file on your behalf.

Best,


**Andre Boniadi, Esq.**

**BEITCHMAN | ZEKIAN**
A PROFESSIONAL LAW CORPORATION
16130 Ventura Blvd., Suite 570
Encino, California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

---

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

---

**From:** Yana Henriks <yhenriks@law-mh.com>
**Sent:** Friday, October 27, 2023 10:34 AM
**To:** Andre Boniadi <aboniadi@bzlegal.com>
**Cc:** Nolan Dilts (MMH) <ndilts@law-mh.com>; David P. Beitchman <dbeitchman@bzlegal.com>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Hi Andre,
Nolan is in deposition today. Yes, you can have an extension to respond until November 13.
Please send your proposed protective order.

We will circulate the dates for depositions next week.
Thank you.

Sent from my iPhone


On Oct 27, 2023, at 9:30 AM, Andre Boniadi <aboniadi@bzlegal.com> wrote:


Hi Nolan,

The Court granted the stipulation to continue trial, so renewing my request below now that we have time to sort out discovery issues.

Best,



**Andre Boniadi, Esq.**

**BEITCHMAN** | ZEKIAN

A PROFESSIONAL LAW CORPORATION

16130 Ventura Blvd., Suite 570
Encino, California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

_____

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

---

**From:** Andre Boniadi
**Sent:** Thursday, October 26, 2023 10:02 PM
**To:** Nolan Dilts (MMH) <ndilts@law-mh.com>
**Cc:** David P. Beitchman <dbeitchman@bzlegal.com>; Yana Henriks <yhenriks@law-mh.com>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Nolan,

We are requesting a two week extension to respond to outstanding discovery, bringing the new deadline to November 13, 2023.  We have some of the documents requested but need additional time due to the sheer amount requested.

Also, we are seeking your stipulation for a protective order to safeguard the sensitive nature of the information and documents requested.

Kindly confirm the extension and your side's agreement to a stipulated protective order.

Best,

Andre Boniadi, Esq.
**BEITCHMAN | ZEKIAN**
16130 Ventura Blvd., Suite 570
California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
[www.bzlegal.com](www.bzlegal.com)

_____

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

On Oct 25, 2023, at 5:19 PM, Nolan Dilts (MMH) <[ndilts@law-mh.com](mailto:ndilts@law-mh.com)> wrote:

Counsel,

Please find attached for electronic service:

**JOINT STIPULATION TO CONTINUE TRIAL AND RELATED DATES; [PROPOSED] ORDER**

Thank you,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: [ndilts@law-mh.com](mailto:ndilts@law-mh.com)

---

**From:** Andre Boniadi <[aboniadi@bzlegal.com](mailto:aboniadi@bzlegal.com)>
**Sent:** Wednesday, October 25, 2023 4:50 PM
**To:** Nolan Dilts (MMH) <[ndilts@law-mh.com](mailto:ndilts@law-mh.com)>
**Cc:** Yana Henriks <[yhenriks@law-mh.com](mailto:yhenriks@law-mh.com)>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Approved.

Andre Boniadi, Esq.
**BEITCHMAN | ZEKIAN**
16130 Ventura Blvd., Suite 570
California 91436
Tel. (818) 986-9100

Fax. (818) 986-9119
www.bzlegal.com

_____

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

On Oct 25, 2023, at 4:31 PM, Nolan Dilts (MMH) <ndilts@law-mh.com> wrote:

Andre,

I also made minor non-substantive changes to indicate that the proposed order is attached just so the Court is aware it is at the end of the document. All changes are attached in redline. Please also confirm that this version may be submitted.

Thank you,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com

---

**From:** Nolan Dilts (MMH)
**Sent:** Wednesday, October 25, 2023 4:26 PM
**To:** Andre Boniadi <aboniadi@bzlegal.com>
**Cc:** Yana Henriks <yhenriks@law-mh.com>
**Subject:** RE: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Thanks, Andre.

Can you confirm that Plaintiff's deposition is also off? That is my understanding from the below, but I would appreciate the confirmation.

Thank you,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com

**From:** Andre Boniadi <aboniadi@bzlegal.com>
**Sent:** Wednesday, October 25, 2023 4:05 PM
**To:** Nolan Dilts (MMH) <ndilts@law-mh.com>
**Cc:** Yana Henriks <yhenriks@law-mh.com>
**Subject:** Re: United Brands Worldwide LLC v. D&K Worldwide LLC, et al., Case No. 22SMCV00951

Nolan,

You have my authority to electronically sign the proposed stipulation.

Thank you for confirming that the scheduled depositions are off. Once we have the records in hand, I will reach out to you to schedule dates.

Thank you,


Andre Boniadi, Esq.
**BEITCHMAN | ZEKIAN**
16130 Ventura Blvd., Suite 570
California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

_____

**NOTICE TO RECIPIENTS**: The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

On Oct 25, 2023, at 3:12 PM, Nolan Dilts (MMH) <ndilts@law-mh.com> wrote:


Andre,

We can move the depositions.  Let us know when you can have the records ready so we can reschedule.  Please also find attached a draft joint stipulation.  Please let us know if you have any revisions or otherwise if we may file with your /s/ signature.

Thanks,

Nolan Dilts, Esq.
<image001.png>
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
E-mail: ndilts@law-mh.com